Argued January 24, modified February 20, rehearing denied April 3, 1917.

## IN RE ALTHOUSE CREEK.

### APPEAL OF LEONARD.

(162 Pac. 1072.)

**Waters and Watercourses—Appropriation—Rights—Quantity of Water.**

1. One entitled to a certain amount of water by appropriation is entitled to have this amount measured at the headgate of his lateral or service ditch, and not at the point of diversion from the stream, especially where these points are two miles apart, since in such case seepage and evaporation of water between these points would be considerable.

[As to right of appropriation of water for irrigation purposes, see note in 98 Am. Dec. 542.]

**Waters and Watercourses—Appropriation—Action to Determine Rights —Decree Apportioning Water.**

2. Under Section 6668, L. O. L., as to when water shall be appurtenant to land for irrigation purposes, a decree determining appropriation rights may apportion the water to a definite number of specified acres, for the purpose of making a record of the right and for the purpose of regulating the exercise of the right so as to economize water and prevent waste.

From Josephine: FRANK M. CALKINS, Judge.

Department 1. Statement by MR. JUSTICE HARRIS.

A petition for certain water users resulted in a determination made, pursuant to Sections 6635 to 6659, L. O. L., inclusive, by the state water board, formerly called the board of control, of the relative rights of the various claimants to the waters of Althouse Creek and certain of its tributaries. After making some modifications, which were clerical rather than otherwise, the Circuit Court approved the findings and order of determination made by the water board. Mary Ellen Leonard, one of the water users, has appealed from the decree of the Circuit Court.

MODIFIED. REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Emmons & Webster,* with an oral argument by *Mr. Lionel R. Webster.*

For respondents there was a brief and an oral argument by *Mr. Gus Newbury.*

MR. JUSTICE HARRIS delivered the opinion of the court.

The decree appealed from determines the names of the water users, the date of relative priority of the respective water rights, the amount of water to which each appropriator is entitled, the description of the lands or place of use, and the number of acres to be irrigated if the use is for irrigation. The findings mentioned thirteen different ditches of varying lengths and name eighteen different water users. One of the ditches is known in the record as the Beach & Platter-Leonard ditch although it is sometimes called the "Old Brown or Dunn ditch." This ditch serves two water users: George W. Dunn and Mary Ellen Leonard. The decree awards 2.2 cubic-feet per second to be used for the irrigation of 110 acres of land owned by George W. Dunn and assigns 0.96 of a cubic-foot per second to be used for the irrigation of 13 acres in the NW. ¼ of the NE. ¼, 24 acres in the NE. ¼ of the NW. ¼ and 11 acres in the SE. ¼ of the NW. ¼ of a designated section. The decree also gives 4 cubic-feet per second to Mary Ellen Leonard for the purpose of mining certain placer ground. Starting at the point of diversion the water is carried more than two miles along the Beach & Platter-Leonard ditch before it reaches the Dunn land and it flows from half a mile to a mile farther before coming to the Leonard land. The water board found that George W. Dunn and Mary Ellen

85 Or.—15

Leonard owned an undivided one-half interest in the Beach & Platter-Leonard ditch and that they "and their predecessors, have each and every year since about 1858 used the waters of Althouse Creek, diverted through their said ditch for the irrigation of their lands and for stock and domestic purposes"; and theirs is second in the order of priorities. The water board also found that:

"The character and kind of crops raised, nature of the soil, the methods and use of the waters of said stream and the climatic conditions prevailing in the vicinity of said lands and streams do not require at the present time for beneficial irrigation of said lands a greater amount of water diverted into and measured at the head of the respective ditches than at the rate of one cubic-foot of water per second of time for each fifty acres so irrigated."

1. The grievance especially emphasized by Mary Ellen Leonard grows out of the fact that the water assigned to designated tracts of land is required to be measured at the head of the ditch at the place where the water is diverted from Althouse Creek. The decree appealed from establishes an unvarying amount of water for each acre of land to be irrigated. , The same inflexible basis is employed with every water claimant. Each acre is given two one hundredths of a cubic-foot of water per second on the theory that each given acre requires that amount of water for beneficial irrigation. The evidence sustains the contention of the appellant that she is entitled to 0.96 of a cubic-foot per second on the land. It is plain that 0.96 of a cubic-foot per second could not possibly be placed upon the land if only that amount should be diverted from Althouse Creek, for the reason that in the very nature of things seepage and evaporation will appreciably diminish the quantity diverted so that by the time the

water reaches the Leonard premises it will be materially less than 0.96 of a cubic-foot per second. The longer the ditch the greater is the loss from seepage and evaporation with the result that a user who takes water from the ditch at a point one mile from the head of the ditch or place of original diversion will really have more water than another person who takes water from the end of a ditch which is two miles in length. Since the appellant is entitled to have 0.96 of a cubic-foot per second on her land because of her right of appropriation dating back to 1858, it follows that she is entitled to have enough additional water diverted at the head of the ditch to compensate for seepage, evaporation and loss necessarily resulting from proper transportation of the water so that she will receive 0.96 of a cubic-foot per second of water at her land for use upon it. Under existing conditions to measure out at the place of diversion the exact amount which the claimant is entitled actually to put on the land is for all practical purposes equivalent to admitting a right and at the same time denying part of it. The water should be measured at the headgate or intake of the appellant's lateral or service ditch: *In re Willow Creek,* 74 Or. 592, 654 (144 Pac. 505, 146 Pac. 475). The quantity to be diverted into the ditch can be so regulated from time to time by the water master as to compensate for the loss necessarily resulting from proper transportation and at the same time enable the claimant to use, in the order of her priority, the quantity of water to which she is entitled.

2. Another assignment of error is predicated upon the contention that the court was without authority to apportion the water to a definite number of specified acres and that the court should have decreed that the whole amount of the water could be used indiscrimi-

nately upon any part of the land owned by Mary Ellen Leonard. Assuming without deciding that the Leonard water right, which was consummated and acquired before the enactment of Section 6668, L. O. L., cannot be inseparably tied to designated portions of land owned by appellant, nevertheless, it does not follow that the state cannot associate the right to use water with specified lands for the purpose of making a record of the right and for the purpose of regulating the exercise of the right so as to economize water and prevent waste. Although declaring that "all water used in this state for irrigation purposes shall remain appurtenant to the land upon which it is used," yet Section 6668, L. O. L., furnishes ample provision for the transfer of the right to other land. The objection made here is fully answered By Mr. Justice BEAN where he says *In re Willow Creek*, 74 Or. 592, 638 (144 Pac. 505, 146 Pac. 475):

"It would seem that the main purpose of said portion of Section 6668 is to make provision for preserving the record of water rights which have been adjudicated, and require one changing the use to make an application therefor to the water board. Otherwise the record of adjudicated water rights would become confused and worthless. It is not the purpose of this statute to divest anyone of a water right. The same effect should be given to the order of the water board."

The remaining assignments of error specified in the abstract of record were waived at the oral argument. The decree of the Circuit Court is modified, without costs. MODIFIED. REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.